UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. CURRAN III, | : | **CASE NO. 1:11-CV-02127** |
| | : | |
| Plaintiff, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| CARBON SPYDER, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

In this civil action, defendant John Mitchell ("Mitchell"), proceeding *pro se*, has filed what the Court construes to be a motion to dismiss pursuant to Rules 12(b)(1) and (b)(3) of the Federal Rules of Civil Procedure, or alternatively, for dismissal pursuant to the doctrine of forum *non conveniens*. For the reasons set forth herein, I recommend that Mitchell's motion be denied.

**I.     Background and Procedural History.**

The origin of this case is peculiar. On November 14, 2011, the *pro se* plaintiff, John Curran ("Curran"), filed a civil complaint naming eight defendants and setting forth eight separate causes of action. Of the eight named defendants, only the following three are part of the lawsuit assigned to this civil action number: (1) Carbon Spyder, a corporation incorporated in California with its principal place of business there; (2) Mitchell, a California citizen; and (3) Ronald Welsh ("Welsh"), a citizen of Arizona. Along with his initial complaint, Curran paid the

filing fee.

After the initial complaint was filed, Curran attempted service on all eight defendants. None of the defendants were properly served, however. Accordingly, all eight defendants, including the three involved herein, filed dismissal motions.[1] On January 25, 2012, after the defendants' motions became ripe for review, Magistrate Judge Smyser recommended that the motions be granted because (1) the Court lacked subject-matter jurisdiction over the claims raised and (2) Curran failed to serve the defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure. *Doc.* 38. On March 29, 2012, the Court adopted Judge Smyser's recommendation that the case be dismissed for lack of subject-matter jurisdiction. *Doc.* 46. The Court, however, did not address the service issue because it was rendered moot in light of the Court's lack of jurisdiction. *Id.* The Court also gave Curran leave to amend. *Id.*

On April 20, 2012, following the Court's Order providing him with leave to amend, Curran filed three separate documents entitled "amended complaints," *see, e.g., Doc.* 47, of which only one document bore the case number assigned to this matter. *Id.* Along with those three documents, Curran included a letter stating that he broke each cause of action down into separate matters. *See Doc.* 48 at 1-2. Based on Curran's letter, Judge Smyser and the Clerk of Court discussed how to

---

[1] At the time, Mitchell and Carbon Spyder were represented by retained counsel.

proceed. Eventually, it was agreed that Curran's documents would be filed in separate cases. *Id.* Accordingly, this particular civil action deals exclusively with Curran's two separate causes of action against Mitchell, Carbon Spyder, and Walsh.

In relevant part, Curran alleges in his amended complaint that he has been assigned all rights and responsibilities for a sub-contract formerly held by a corporation, Gargoyles, Inc. According to Curran, Gargoyles entered into a sub-contract with Carbon Spyder for the production of "aviation repair inspection products." Mitchell, acting on Carbon Spyder's behalf, however, notified Gargoyles "of his intent to withdraw [the] subcontract offer." This allegedly occurred six months after the contract was executed and one month after "all parts had been delivered and accepted by the customer." As a result, Curran raises a claim for breach of contract against Mitchell and Carbon Spyder.

Curran also claims that both Carbon Spyder and Mitchell were provided rental space for conducting business. Mitchell, though, purportedly used the rental space for personal storage for a period of 7.5 months. As a result, Curran raises a second claim for breach of contract against both Carbon Spyder and Mitchell.

In addition to the aforementioned breach-of-contract claims, Curran sets forth that Mitchell had also requested an advance to satisfy a child support obligation. According to Curran, he gave Mitchell the requested money, but it has

not been paid back.  Furthermore, Curran states simply that Mitchell slandered his character by providing "both written and oral statements that were knowingly false in a clear effort to discredit [him]."  Liberally construing his amended complaint, as I am required to do, Curran seeks to recover a damages award amounting to $86,612.84, from both Mitchell and Carbon Spyder, in addition to punitive damages and other relief deemed appropriate by the Court.

Curran's claims against Walsh are not described herein because after Curran filed his amended complaint, Judge Smyser, *sua sponte*, recommended that those claims be dismissed for lack of subject-matter jurisdiction.  *Doc.* 48.  Judge Smyser, however, found that the Court had original jurisdiction, *via* the diversity jurisdiction statute – 28 U.S.C. § 1332, over Curran's claims raised against Mitchell and Carbon Spyder.  *See id.* at 4.  On May 17, 2012, the Court adopted Judge Smyser's Report and Recommendation.  *Doc.* 52.

Subsequently, after Walsh had been dismissed, counsel for Mitchell and Carbon Spyder moved to withdraw his appearance, *Doc.* 57, and on July 2, 2012, Judge Smyser granted the motion.  *Doc.* 59.  Moreover, since counsel's withdrawal, no attorney has re-entered an appearance on Carbon Spyder's behalf, and Mitchell has been proceeding *pro se*.

Upon reviewing the docket, it became obvious that Curran had not properly served the amended complaint on Mitchell or Carbon Spyder.  Accordingly, a

telephonic conference was held on May 23, 2013. Following the conference, we ordered Curran to properly serve his amended complaint on Mitchell and Carbon Spyder pursuant to Rule 5 of the Federal Rules of Civil Procedure, *Doc.* 66, and Curran complied.

After being served with the amended complaint, Mitchell filed the motion currently under review and a corresponding brief-in-support. *Docs.* 71 & 72. In his motion, Mitchell moves for dismissal pursuant to Rules 12(b)(1) and (b)(3) of the Federal Rules of Civil Procedure or alternatively, for dismissal pursuant to the doctrine of forum *non conveniens*. On September 30, 2013, Curran filed a brief that did not address the merits of Mitchell's motion. *See Doc.* 73. Nonetheless, given his *pro se* status, we issued a show-cause order on June 5, 2014, providing Curran with a final opportunity to address the merits of Mitchell's motion with a specific focus on the venue-related issues. *Doc.* 74. On June 27, 2014, Curran complied. *Doc.* 75. Thereafter, Mitchell filed a timely reply brief. *Doc.* 76. The motion, having been fully briefed, is ripe for disposition on the merits.

## II. Discussion.

### A. Subject-Matter Jurisdiction.

Mitchell challenges the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2] Rule 12(b)(1) is the proper tool by which parties may challenge a federal court's subject-matter jurisdiction. *See Pa. Protection and Advocacy, Inc. v. Houston*, 136 F.Supp.2d 353, 359 (E.D. Pa. 2001); *see also Gallethin Realty Dev., Inc. v. BP Products of N. Am.*, 163 F. App'x 146, 149 (3d Cir. 2006). Parties seeking to have a case dismissed pursuant to this Rule, for lack of subject-matter jurisdiction, may present "either a facial or factual challenge." *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (holding modified on choice of law grounds in *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003)); *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A party challenges subject-matter jurisdiction "in fact" when he or she disputes the existence of jurisdictional facts alleged in the complaint. *Pa. Protection*, 136 F.Supp.2d at 359. Notably, when "reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould*, 220

---

[2] As federal courts are courts of limited jurisdiction, they have a continuing duty to satisfy themselves of jurisdiction before addressing the merits of a case. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993). Accordingly, the Court may also review, *sua sponte*, whether it has subject-matter jurisdiction over Curran's claims against Carbon Spyder. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (citation omitted); *Shaffer v. GTE North, Inc.*, 284 F.3d 500, 502 (3d Cir. 2002).

F.3d at 176. The plaintiff bears the burden of proof in establishing jurisdiction. *Moretnsen v. First Fed. Sav. Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). By contrast, when the challenge is facial, "the court must only consider the allegations of the complaint ... in the light most favorable to the plaintiff." *Gould*, 220 F.3d at 176; *see also Mortensen*, 549 F.2d at 891 ("[T]he court must consider the allegations of the complaint as true.").

In his amended complaint, Curran pleads that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. *Doc.* 47 at 1. For a federal court to have federal question jurisdiction pursuant to § 1331, however, the action must "aris[e] under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. A case meets that standard and arises under federal law "if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (citation omitted). Moreover, a federal court may exercise jurisdiction over state-law claims, so long as those types of claims "implicate significant federal issues." *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F.Supp.2d 576, 579 (E.D.Pa. 2007). As Judge Smyser already deduced, *Doc.* 48 at 3, the Court cannot exercise federal question jurisdiction over Curran's claims because they arise solely under state law and implicate no significant federal issues.

The Court's analysis, though, does not end there. Curran appears to alternatively invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Under § 1332, district courts have original jurisdiction to hear cases where the matter in controversy exceeds the value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). In order for jurisdiction to exist, there must be complete diversity, meaning that each defendant must be a citizen of a different state from each plaintiff. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

In the present action, there appears to be no question that complete diversity exists. Specifically, Curran alleges that he is a citizen of Maryland while both Mitchell and Carbon Spyder are citizens of California. *Doc.* 47 at 2. Furthermore, Curran seeks $ 86,612.84 in damages against Carbon Spyder and Mitchell, and it cannot be said to a legal certainty that Curran's damages are really for less than the jurisdictional amount to justify dismissal.[3] *See Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)(quoted and cited cases omitted)(applying the "legal certainty" test established by *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) and iterating that "dismissal is appropriate only if the

---

[3] Although Curran miscalculates the amount of damages requested with respect to his claim that the defendants breached the rental agreement, *Doc.* 47 at 3, and his "itemized" listing of damages is unclear, *see id.* at 2, it still cannot be said, to a legal certainty, that the total amount of damages sought are really for less than the jurisdictional amount.

8

federal court is certain that the jurisdictional amount cannot be met."). Accordingly, Judge Smyser's previous determination, *see Doc.* 48 at 3, that the Court has subject-matter jurisdiction over Curran's claims against Mitchell and Carbon Spyder, should not be disturbed.

**B. Venue.**

Generally, venue is "[t]he proper or a possible place for the trial of a lawsuit," Garner's Dictionary of Modern Legal Usage 923 (3d ed. 2011), and is governed by the broad provisions set out in 28 U.S.C. § 1391. *See In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 295-96 (3d Cir. 2004). In relevant part, § 1391 provides that a civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated*, or (3) if there is no district in which an action may otherwise be brought …, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(emphasis added). If venue is improper, Federal Rule of Civil Procedure 12(b)(3) provides a defense to the plaintiff's chosen forum.

Specifically, Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that "a party may [file a motion for]: ... (3) improper venue." Fed.R.Civ.P. 12(b)(3). These types of motions "generally require the court to accept as true the

allegations of the pleadings." *Heft v. AAI Corp.*, 355 F.Supp.2d 757, 762 (M.D. Pa. 2005) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982)). "The parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft*, 335 F.Supp.2d at 762 (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n. 1 (3d Cir. 1992)); *Myers*, 695 F.2d at 724. "Whatever the nature of the parties' submissions, the court is bound to view the facts in the light most favorable to the plaintiff." *Heft,* 335 F.Supp.2d at 762 (citing *Carteret*, 954 F.2d at 142 & n. 1; *Myers*, 695 F.2d at 724). Moreover, since "[a] motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense … it is not necessary [as contrasted with jurisdiction] for the plaintiff to include allegations showing … venue to be proper." *Myers*, 695 F.2d at 724 (quoted source omitted). Accordingly, it follows that the moving defendant has the burden of proving the affirmative defense. *Id.* Last, in a case such as this one, involving multiple claims, venue must be proper for each claim, in order for each claim to proceed. *See Lomanno v. Black*, 285 F.Supp.2d 637, 641 (E.D. Pa. 2003); *Am. Trade Servs., Inc. v. Tele–E–Star Communication, Inc.*, No. Civ. A. 98–CV–2636, 1998 WL 964203, at *2 (E.D. Pa. Nov. 25, 1998); *Jones v. Trump*, 919 F.Supp. 583, 587 (D. Conn. 1996); *Phila. Musical Soc'y. Local 77 v.*

*Am. Fed'n of Musicians of the United States and Canada*, 812 F.Supp. 509, 517 (E.D. Pa. 1992).

Based on the allegations contained in Curran's amended complaint, venue is clearly improper pursuant to §§ 1391(b)(1) and there is nothing to presently indicate that § 1391 (b)(3) is applicable. Thus, to prevail on his Rule 12(b)(3) motion, Mitchell must prove that venue is improper pursuant to § 1391(b)(2).

To determine whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction, "[t]he test ... is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim….'" *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). The Third Circuit has explained: "In assessing whether events or omissions giving rise to the [plaintiff's] claims are substantial, it is necessary to look at the nature of the dispute." *Id.* at 295. Moreover, the venue provision "favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial,'" *id.* at 294, and that "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute," *id.*; *see Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979) (noting that the purpose of the venue provision is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial").

Applying this test to the case *sub judice*, I find that the answer is difficult to surmise, and the answer is especially encumbered given the parties' *pro se* statuses. Nevertheless, the recommended course of action should operate to achieve a just result while adhering to the spirit of the relevant rules, statutes, and body of case law.

In support of his motion, Mitchell argues that none of the events giving rise to Curran's claims occurred in Pennsylvania, much less in the District where this Court sits. *Doc.* 72 at 13. Mitchell, instead, contends that the claims arose out of events occurring in the States of California and Maryland. *Id.* at 14. But Mitchell, who maintains the burden of proof, does not provide any evidence, such as affidavits, to support his position. Since Mitchell did not come forward with any evidence, Curran is permitted to rely on the allegations contained in his amended complaint. As previously stated, however, Curran was never required to plead allegations demonstrating that venue was proper in this District, and there is, indeed, nothing pleaded in the amended complaint with regard to venue here. *See Doc.* 47. As a consequence of Mitchell's failure to satisfy his burden of proof, his 12(b)(3) dismissal motion should be denied. Yet, based on Curran's assertions in opposition to Mitchell's motion, the Court is increasingly concerned that venue in this District is improper.

Specifically, Curran argues in opposition to Mitchell's motion that the nexus for venue in the Middle District, on his first breach-of-contract claim, arises out of the legal work that non-party attorneys allegedly undertook to negotiate and execute the contract at issue. Such a basis, however, is tenuous on its face and fails to make even a *prima facie* showing that venue is proper. Moreover, to the extent that Curran is contending that, because the contract was executed in Pennsylvania, venue is proper here, such an assertion is equally inadequate to establish venue. *See Lackawanna Chaper of the Railway & Locomotive Historical Society, Inc. v. St. Louis County, Missouri*, No. 02-0994, 2004 WL 503447 (M.D. Pa. Mar. 12, 2004)(Vanaskie, J.)(stating that the appropriate venue for a breach-of-contract action is where the contract was to be performed).[4] Furthermore, while his basis for venue on the defamation claim appears adequate upon a cursory review, *see Doc.* 75 at 3; *see also Klauder & Nunno Enter. V. Hereford Assoc.*, 723 F.Supp. 336, 342 (E.D. Pa. 1989)(finding that venue was proper on a defamation claim

---

[4] It is also troubling that the contract at issue contains an arbitration clause that is clear and unambiguous on its face. *See Doc.* 75 at 7. In the Seventh Circuit, this type of clause would subject Curran's first breach-of-contract claim to dismissal for improper venue. *See, e.g., Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801 (7th Cir. 2011) (dismissing case for improper venue based on inclusion of arbitration clause in the underlying contract). In the Third Circuit, however, dismissal based on the existence of a valid arbitration clause does not concern whether venue is proper; instead, it is an issue relating more to the merits of an underlying claim. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764, 771-76 (3d Cir. 2013)(discussing the standard for evaluating motions to compel arbitration).

where the alleged defamatory statements were published), Curran does not address venue with respect to his second breach-of-contract claim nor his claim regarding Mitchell's alleged failure to repay a personal loan of money.

Under these circumstances, dismissal pursuant to Rule 12(b)(3) is inappropriate - especially since Mitchell carries the burden of proof. Curran, though, should not be permitted to wholly escape Mitchell's venue challenge. This is especially true, whereas here, Curran's own assertions further call into question whether venue is proper in this District on his first breach-of-contract claim, at the very least. Accordingly, the most just, and legal, course of action for the Court to take would be to deny Mitchell's Rule 12(b)(3) dismissal motion, but permit him to later file a similar motion pursuant to 28 U.S.C. § 1406 or a motion to change venue pursuant to 28 U.S.C. § 1404.[5] Said motion, though, should include and incorporate evidence, such as affidavits, that demonstrate how venue is improper

---

[5]   Section 1406(a) of Title 28 of the United States Code provides: "The district court of a district in which is filed a case laying venue in the wrong ... district shall dismiss, or if it be in the interest of justice, transfer such case to any district ... in which it could have been brought." 28 U.S.C. § 1406(a). Section 1404(a), on the other hand, provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Absent a second motion by Mitchell, under either statute, the Court may *sua sponte* enter an order dismissing the case, or changing the venue, if it becomes evident that venue is improper or the interests of justice demand a transfer. *See, e.g., Decker v. Dyson*, 165 F. App'x 951, 954 n. 3 (3d Cir. 2006)(noting that a district court may *sua sponte* invoke the provisions of 28 U.S.C. § 1406(a)).

under 28 U.S.C. § 1391(b)(2). In the event that Curran provides reliable evidence that sufficiently opposes Mitchell's evidence, the Court will consider holding a hearing on this particular matter.[6]

### III. Recommendations.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Mitchell's dismissal motion (*Doc.* 71) be **DENIED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the

---

[6] Mitchell also moves for dismissal pursuant to the arcane doctrine of forum *non conveniens*. The argument is without merit, however, because the Supreme Court has stated: "The common-law doctrine of forum *non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad, … and perhaps in rare instances where a state … court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping*, 127 S.Ct. 1184, 1190 (2007)(quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2 (1994)). Here, none of the parties are foreign and there is no indication that a superior forum is abroad. Similarly, this does not appear to be that "rare instance" where a state court serves litigational convenience the best; in fact, it is unclear which state would even serve such an interest at this time. The doctrine of forum *non conveniens*, therefore, is inapplicable.

Even if the doctrine applied, in order to persuade this Court to grant such a motion, Mitchell is required to prove two elements (1) that an adequate alternative forum exists to all defendants and (2) that private and public interest factors weigh heavily in favor of dismissal. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43-44 (3d Cir. 1988). Other than providing legal argument in support of his position, Mitchell has not met his burden of proof. Furthermore, under the doctrine, "a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum…." *Kisano Trade & Invest. LTD., v. Lemster*, 737 F.3d 869, 874 (3d Cir. 2013)(quoted case omitted).

disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **28th** day of **July, 2014**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge